**PEUGEOT MOTORS OF AMERICA, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 80-9-01400.**

United States Court of International Trade.

Sept. 13, 1984.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City (Lewis R. Clayton, New York City, on the briefs; Steven B. Rosenfeld and Lee J. Dobkin, New York City, of counsel; and Alan S. Hays, New York City), for plaintiff.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Washington, D.C. (A. David Lafer, Francis J. Sailer, New York City, on the brief; Edward N. Maurer, Washington, D.C., of counsel), for defendant.

FORD, Judge:

This action contests Customs' appraisal of plaintiff's automobiles for the model year 1974. Entries were made at New York, Norfolk, Portland and Los Angeles. The automobiles are included in the "Final List", T.D. 54521, and were appraised on

the basis of cost of production (COP) pursuant to section 402a(f) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1402(f).[1] There is no dispute that cost of production is the proper basis of appraisement. However, plaintiff asserts the value arrived at by customs is erroneous.

The liquidation based upon the erroneous appraisal should be set aside, according to plaintiff, since Customs applied "retroactively" a "new" interpretation of section 402a(f), *supra*, contrary to the general principles of administrative and constitutional law. Plaintiff also urges that an "unreasonable and wrongful delay" of the liquidation, in violation of the Administrative Procedure Act and Customs Regulations, requires the liquidation be set aside.

Plaintiff has moved pursuant to Rule 56(a) of the Rules of this Court for summary judgment. Defendant has cross-moved for summary judgment under Rule 56(b).

The statutory provisions involved provide as follows:

Final list published by the Secretary of the Treasury pursuant to section 6(a), Public Law 927, 84th Congress.

T.D. 54521:

.    .    .    .    .

Every article specified in such final list which is entered, or withdrawn from warehouse, for consumption on or after the thirtieth day after the date of publication of such final list in the Federal Register, shall be appraised in accordance with the provisions of section 402a of the Tariff Act of 1930, as amended.

.    .    .    .    .

19 U.S.C. § 1402:

1402. Value (alternative).—(a) Basis.— For the purposes of this Act [§ 1202 et seq. of this title] the value of imported articles designated by the Secretary of the Treasury as provided for in section 6(a) of the Customs Simplification Act of 1956 [not to this section] shall be—

.    .    .    .    .

(3) If the appraiser determines that neither the foreign value, the export value, nor the United States value can be satisfactorily ascertained, then the cost of production;

.    .    .    .    .

(f) Cost of production.—For the purposes of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

Section 315(d) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1315(d):

(d) No administrative ruling resulting in the imposition of a higher rate of duty or charge than the Secretary of the Treasury shall find to have been applicable to imported merchandise under an established and uniform practice shall be ef-

---

**1.** Repealed by Pub.L. 96–39, 93 Stat. 144, 201.

fective with respect to articles entered for consumption or withdrawn from warehouse for consumption prior to the expiration of thirty days after the date of publication in the Federal Register of notice of such ruling; but this provision shall not apply with respect to the imposition of antidumping duties or the imposition of countervailing duties under section 1303 of this title.

■ Plaintiff's position, that the appraisement should be set aside since it is "retroactively" applied by virtue of a "new" interpretation of the COP statute, is without merit. Under the statutory provisions covering importations, duties can never be collected prospectively. At the time of importation "estimated" duties are deposited with Customs. The merchandise is thereafter appraised, classified and liquidated in accordance with 19 U.S.C. 1500.[2] The liquidation is the final computation and ascertainment of duties due on the merchandise covered by the entries. It is therefore apparent that the final collection of duties must be "retroactive" since any increase or decrease of duties as a result of liquidations can only take place at a time subsequent to the time of entry. The question of retroactive assessment of duty was considered by the Court of Customs and Patent Appeals in *Dart Export Corp., et al. v. United States*, 43 CCPA 64, C.A.D. 610 (1956), cert. denied 352 U.S. 824, 77 S.Ct. 33, 1 L.Ed.2d 48 (1956), wherein the Court made the following comment:

> The importer also argues that the imposition of additional duties under the statute at the time of liquidation is a "case of retroactivity so arbitrary, capri-

cious, and unreasonable as to violate the requirement of due process." It is our view that this argument is not well founded. We cannot see where the imposition of additional duties at the time of liquidation is retroactive in an arbitrary manner, as urged by appellant, because the statute itself gives ample notice that there may be a change from the duties assessed at entry at the time of liquidation."

The question of whether the appraisement herein violated the principle of "established and uniform practice" must also be resolved in favor of defendant. Plaintiff contends the change in interpretation of the COP statute would nullify the liquidation as a violation of an established and uniform practice. The basis of this position is the ambiguity of the statute and the right of an importer to rely upon a long standing practice. The cases of *Henry Clay and Bock & Co. Ltd. v. United States*, 41 CCPA 45, C.A.D. 527 (1953), *Commonwealth Oil Refining Company, Inc. v. United States*, 60 CCPA 162, 480 F.2d 1352 (1973), and *United States v. Electrolux Corporation*, 46 CCPA 143, C.A.D. 718 (1959), relied upon by plaintiff, relate to ambiguous statutes. The cases of *United States v. H. Bayersdorfer & Co.*, 16 Ct.Cust.Appls. 43, T.D. 42717 and *Benrus Watch Co. Inc., et al. v. United States*, 53 Cust.Ct. 28, C.D. 2469 (1964), relied upon by plaintiff, relate to long-established administrative practice concerning classification. Reference to ascertaining the cost of production goes back as far as the Tariff Act of 1883 (section 9) and has continued

---

**2.** 19 U.S.C. § 1500:

§ 1500. Appraisement, classification, and liquidation procedures.

The appropriate customs officer shall, under rules and regulations prescribed by the Secretary—

(a) appraise merchandise in the unit of quantity in which the merchandise is usually bought and sold by ascertaining or estimating the value thereof by all reasonable ways and means in his power, any statement of cost or costs of production in any invoice, affidavit, declaration, or other document to the contrary notwithstanding;

(b) ascertain the classification and rate of duty applicable to such merchandise;

(c) fix the amount of duty to be paid on such merchandise and determine any increased or additional duties due or any excess of duties deposited;

(d) liquidate the entry of such merchandise; and

(e) give notice of such liquidation to the importer, his consignee, or agent in such form and manner as the Secretary shall prescribe in such regulations.

throughout the various tariff acts. The question of ambiguity has not been satisfactorily established and in fact need not be considered under the circumstances of this case.

██ It is noted that the statutory provision covering uniform practice (19 U.S.C. 1315(d)) begins with "No administrative ruling resulting in the imposition of a higher *rate of duty* or charge ...." This relates to the imposition of a rate of duty which is imposed under the classification provisions of 19 U.S.C. § 1500 and not the appraisement provisions of 19 U.S.C. § 1500 and § 1402. Uniformity in classification, as indicated by the *Bayersdorfer* and *Benrus* cases, *supra*, was intended to be covered by section 1315(d). Appraisement is conceptually different from classification. In appraisement every transaction stands independently. The same merchandise from the same manufacturer sold to a different purchaser may result in an entirely different appraisement, as well as the basis of appraisement, depending upon the terms, conditions, and restrictions, etc. of the sale. Consequently, a uniform practice of appraisement is not possible, nor was the law intended to encompass appraisement under the uniformity provisions. *Hensel, Bruckmann & Lorbacher, Inc., For A/C Verona Dyestuffs v. United States*, 44 Cust.Ct. 722, Reap.Dec. 9709 (1960), aff'd. 46 Cust.Ct. 779, A.R.D. 130 (1961), aff'd 49 CCPA 15, C.A.D. 787 (1962). This being so, the fact that Customs had accepted (with some changes) plaintiff's COP figures from 1958 to 1970 does not endow upon plaintiff the right to expect the formula utilized to remain unchanged.

██ Plaintiff's contention that the time of liquidation was unreasonably delayed in violation of the APA and the Customs Regulations is untenable. Under the present statutory provisions, 19 U.S.C. § 1504, (not in effect at the time the involved merchandise was entered) the entry is deemed liquidated as entered if Customs had not liquidated the entry within one year from the date of entry or withdrawal from ware-house. Congress had not prescribed a time period within which to liquidate entries prior to this provision as is evident from the statement of Reason for Change contained in S.Rep. No. 95–778 at 832, U.S.Code Cong. & Admin.News 1978, pp. 2211, 2243, which contains the following:

> *Reason for change.* —The provisions adopted by the committee [section 209] would increase certainty in the customs process for importers, surety companies, and other third parties with a potential liability relating to a customs transaction. *Under the present law, an importer may learn years after goods have been imported and sold that additional duties are due, or may have deposited more money for estimated duties than are actually due but be unable to recover the excess for years as he awaits liquidation.* Surety companies, which are jointly liable with importers for additional duties, would be better able to control their liabilities. Sureties would also be better protected against losses resulting from the dissolution of their principals in instances where there has been undue delay in liquidating entries. [Emphasis supplied.]

Plaintiff's citation of section 159.51 of the Customs Regulations does not support its position that said regulation was violated by the delay in liquidation. Section 159.51, *supra*, refers to suspensions of liquidation, which are entirely different than delay. The term suspension is a term of art utilized in Customs jurisprudence which permits the action to remain in a hiatus until a final judicial determination is made. The delay occasioned by the overseas investigation did not amount to a suspension nor did it violate any customs regulations in existence at the time of entry.

Neither did the delay result in a violation of the Administrative Procedure Act nor was the delay a result of conduct which was arbitrary, capricious, an abuse of discretion and otherwise not in accordance with laws as prescribed by § 706(2)(A) of

the Administrative Procedures Act.[3] The process of appraising the merchandise pursuant to 19 U.S.C. § 1500, including a foreign investigation, is in the nature of a fact-finding activity and not a rule or rule-making process as defined in 5 U.S.C. § 551(4)(5).[4] *American Express Company v. United States,* 60 CCPA 86, C.A.D. 1087, 472 F.2d 1050 (1973). In any event Customs was not, at the time involved herein, required to liquidate entries within any particular time period. In *Dart* the court, considering this contention, made the following observation:

The importer has presented still another argument as follows: "If the collector may liquidate more than 60 days from the date of entry, he may not delay indefinitely but must liquidate within a 'reasonable time.' Two years was not a reasonable time in the present case." Appellant argues that the reason two years between the time of entry and the date of liquidation was unreasonable in this case was because there was very little investigative work done by the collector during this period, and that the intervening delays were entirely unexplained. However, appellant has not shown that there was any departure from the usual administrative practice as defined by the applicable statutes. While the testimony in the record shows that any delays which occurred prior to liquidation were

not a result of the importer's action, this is far from a showing that there were unreasonable delays on the part of the collector, as appellant would have us believe. It is our opinion that the facts of the present case show that liquidation occurred in the due course of events after entry, and therefore not at an unreasonable time after entry. Furthermore, the reasonableness of the time of liquidation is not a factor to be considered in this class of cases since, according to the interpretation given previous tariff statutes, there is no time limit within which the collector shall make his original liquidation, *Vitelli & Son v. United States, supra; United States v. DeRivera, supra* [73 F. 679]. This, as far as we know, is still the law under the Tariff Act of 1930.

In view of the foregoing, plaintiff's motion for summary judgment is denied and defendant's cross-motion for summary judgment is granted. The action is, therefore, dismissed.

Judgment will be entered accordingly.

---

**3.** § 706. Scope of review

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

.        .        .        .

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—
    (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

**4.** § 551. Definitions

.        .        .        .        .

(4) "rule" means the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency and includes the approval or prescription for the future of rates, wages, corporate or financial structures or reorganizations thereof, prices, facilities, appliances, services or allowances therefor or of valuations, costs, or accounting, or practices bearing on any of the foregoing; (5) "rule making" means agency process for formulating, amending, or repealing a rule.